**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Theodore Lichtenstein, III,<br><br>    Plaintiff<br><br>v.<br><br>Bellagio, LLC d/b/a Bellagio Hotel & Casino;<br>MGM Resorts International,<br><br>    Defendants | Case No.: 2:23-cv-00629-JAD-BNW<br><br>**Order Dismissing Case for Lack of Subject-Matter Jurisdiction and Denying as Moot Motion to Dismiss**<br><br>[ECF Nos. 13, 17] |

  Advantage gambler Theodore Lichtenstein sues Bellagio, LLC for conversion, trespass to chattels, and deceptive trade practices after the casino temporarily retained $20,200 in gambling chips belonging to him. Lichtenstein alleges that this court can hear his claims based on diversity jurisdiction, but it was not apparent from his complaint how this case about the temporary loss of $20,200 in casino chips meets the $75,000 amount in controversy required, so I directed him to show cause why federal subject-matter jurisdiction exists.[1] Although he responds that emotional damages, punitive damages, and attorneys' fees will net him more than $75,000,[2] I find that it appears to a legal certainty that the value of this case does not meet the jurisdictional threshold. So I dismiss this case without prejudice to Lichtenstein's ability to refile it in state court.

---

[1] ECF No. 11 (show-cause minute order).

[2] ECF No. 13 (Lichtenstein's response to the OSC).

**Background**

In August 2021, plaintiff Theodore Lichtenstein attempted to redeem $20,200 in casino chips at the Bellagio Casino in Las Vegas, Nevada.[3] Bellagio could not verify where or how Lichtenstein acquired the chips, so it retained them, purportedly under Nevada Gaming Regulation 12.060(4), which prohibits gaming licensees from redeeming chips for people who may not have obtained them "directly and lawfully" from the licensee casino.[4] Lichtenstein filed a voluntary statement with the Nevada Gaming Control Board's Enforcement Division contesting Bellagio's decision and ultimately received the value of the chips eight months later.[5] He sues Bellagio for conversion, trespass to chattels, and deceptive trade practices, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332.[6] He offers the conclusory allegations in his complaint that he "has been damaged in attorney's fees to recoup the stolen funds/chips, lost use of funds, punitive damages, emotional distress, travel expenses, and in other manners which the facts warrant" and says that "[t]here is over $75,000 at issue in this matter."[7]

**Discussion**

Federal courts are courts of limited jurisdiction.[8] "Jurisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000."[9] "Conclusory allegations as to the amount in controversy are insufficient."[10] But for

---

[3] ECF No. 1 at ¶ 20; ECF No. 17 at 3.
[4] ECF No. 17 at 3.
[5] *See* ECF No. 13 at 11, 28.
[6] ECF No. 1 at ¶¶ 12, 23, 30.
[7] *Id.* at ¶¶ 11, 31.
[8] *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).
[9] *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).
[10] *Id.* at 1090–91.

the court to dismiss sua sponte a case brought originally in federal court based on an insufficient case value, "it must appear to a legal certainty that the plaintiff's claim is really for less than the jurisdictional amount to justify dismissal."[11]

**A.     Lichtenstein hasn't shown compensatory damages of more than $1,000.**

Because he eventually received the $20,200 value of his chips, Lichtenstein does not seek to recover this amount, and he does not include it in the amount in controversy. Instead he contends that, because he lost the use of his funds, he is due a 1% rate of return on his $20,200,[12] which he estimates at approximately $1,000 for the eight months that Bellagio retained his chips.[13] He also claims that he is due the round sum of $50,000 for the outrage and emotional distress that this episode caused him.[14] In support, Lichtenstein cites a string of cases in which casino patrons received damages for emotional distress.[15] Bellagio responds that all of Lichtenstein's proffered cases are distinguishable and, because he does not allege a physical manifestation of his emotional distress, he can't recover such damages under Nevada law.[16]

In the absence of a physical injury, Nevada law requires that a plaintiff show "some physical manifestation of emotional distress in order to support an award of emotional damages."[17] Lichtenstein does not claim that he suffered a physical manifestation of emotional

---

[11] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–290 (1938)).

[12] *Id*. at 12–13.

[13] *Id*.

[14] *Id*. at 4, 13.

[15] *Id*. at 5.

[16] ECF No. 17 at 6–8.

[17] *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010) (citing *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998)).

distress here, so he leans instead on several cases in which casino patrons received large damage awards for their emotional distress.[18]  But those cases involved false imprisonment, false arrest, battery, assault, or unreasonable search and seizure—some of which resulted in physical injury.[19]  The Supreme Court of Nevada recognized in *Hernandez v. City of Salt Lake* that a false-imprisonment plaintiff need not show a physical injury in order to recover emotional-distress damages.[20]  But Lichtenstein does not plead false imprisonment; he pleads property claims of conversion and trespass to chattel, along with deceptive trade practices.  Nevada's High Court has specifically declined to allow emotional-distress damages for "a claim for emotional distress damages resulting from deceptive trade practices,"[21] reasoning that, while the very nature of assault claims guard against illusory recoveries for emotional distress, the same is not true for deceptive-trade-practices claims with accompanying emotional-distress damages.[22]

       Lichtenstein has not shown that he will be able to recover emotional-distress damages for Bellagio's actions here.  It is not enough to merely state that he is outraged and thus entitled to

---

[18] *See* ECF No. 13 at 5, 13.

[19] *Hazelwood v. Harrah's*, 862 P.2d 1189, 1192 (Nev. 1993), *overruled on other grounds by Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750 (Nev. 1999) (plaintiff brought false-imprisonment, negligence, negligent-misrepresentation, and defamation claims against a casino, and while the plaintiff provided no evidence of a physical injury, the Court upheld a hefty jury award); *Grosjean v. Imperial Palace, Inc.*, 212 P.3d 1068, 1080 (Nev. 2009) (plaintiff brought false-imprisonment, battery, conspiracy, and unreasonable-search-and-seizure claims and, while the district court dismissed the state-law claims based on a double-recovery theory, the Court upheld a jury award in which a plaintiff received compensatory damages for the unreasonable-search-and-seizure claim with no physical injury).

[20] *See Hernandez v. City of Salt Lake*, 686 P.2d 251, 253 (Nev. 1984) (citing *Lerner Shops v. Marin*, 423 P.2d 398 (Nev. 1967)) ("[I]n a suit for false imprisonment[,] a successful plaintiff is entitled to compensation for all the natural and probable consequences of the wrong, including injury to the feelings from humiliation, indignity and disgrace to the person, and physical suffering.  The injury to health may be due to mental suffering.").

[21] *Betsinger*, 232 P.3d at 436.

[22] *Id.*

4

the arbitrary sum of $50,000 in emotional-distress damages; he must demonstrate a physical injury or illness caused by Bellagio's retention of his chips. Because Lichtenstein does not offer specific facts in his complaint or his response to my show-cause order that satisfy this element, the only compensatory damages that he has identified to count towards the amount in controversy total just $1,000.

### B. Punitive damages won't likely push Lichtenstein's amount in controversy over the jurisdictional line.

Lichtenstein argues that he is entitled to $50,000 in punitive damages because Bellagio acted fraudulently and with malice.[23] He contends that the casino acted fraudulently when it trespassed him because casinos are not lawfully permitted to trespass advantage gamblers simply for being advantage gamblers.[24] He argues that Bellagio acted with malice because it knew it was not lawfully permitted to trespass Lichtenstein.[25] Bellagio responds that it lawfully retained Lichtenstein's chips because it could not determine their origin and that it did not act with the requisite oppression, fraud, or malice.[26]

Punitive damages can factor into the amount in controversy if they are available under state law,[27] and NRS 42.005 authorizes an award of "exemplary and punitive damages" for tort claims in Nevada when the plaintiff proves by clear and convincing evidence that the defendant is "guilty of oppression, fraud[,] or malice, express or implied."[28] If Lichtenstein could establish

---

[23] ECF No. at 6.
[24] *Id*. at 9.
[25] *Id*.
[26] ECF No. 17 at 3, 8–9.
[27] *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir.2001).
[28] Nev. Rev. Stat. § 42.005(1).

an entitlement to punitive damages in this case, it is not likely that a $50,000 award would stick. Any punitive-damage award must also comport with both the procedural and substantive requirements of the Fourteenth Amendment's due process clause.[29] "Courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered,[30] and as the U.S. Supreme Court noted in *State Farm v. Campbell*, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."[31] With just $1,000 in economic loss and no reprehensible facts, a $50,000 punitive-damages award would net a 50:1 ratio that would likely be unconstitutionally excessive.[32] So, assuming that a jury would award Lichtenstein punitive damages for Bellagio's eight-month retention of his casino chips, at most he should expect an award closer to $10,000.

---

[29] *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) ("The Due Process Clause of the Fourteenth Amendment prohibits a state from imposing a grossly excessive punishment on a tortfeasor." (cleaned up)).

[30] *Bongiovi v. Sullivan*, 138 P.3d 433, 452 (Nev. 2006) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003)).

[31] *State Farm*, 538 U.S. at 425.

[32] *See, e.g., Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003) (approving 7:1 ratio in race-discrimination case); *Bains LLC v. Arco Prod. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 777 (9th Cir. 2005) (holding that as high as a 9:1 ratio could be appropriate in a racial-harassment case); *see also BMW v. Gore*, 701 So. 2d 507, 515 (Ala. 1997) (reducing punitive damages award to a 11.5:1 ratio after the Supreme Court found in *BMW v. Gore*, 517 U.S. 559 (1996), that a 500:1 ratio award unconstitutionally excessive for a case with only economic harm on a victim who was not financially vulnerable, conduct that manifested no indifference to health or safety, and no deliberate false statements or acts of affirmative misconduct).

C.    **Even with anticipated attorneys' fees, the amount in controversy comes up short.**

Lichtenstein attempts to push his amount in controversy over the $75,000 line with an anticipated award of attorneys' fees. He argues that the $6,000 in past attorneys' fees he incurred from the Nevada Gaming Control Board's administrative proceedings should be included in the amount in controversy,[33] plus another $20,000 in future attorneys' fees because NRS 41.600(3)(c) authorizes an award of fees for successful deceptive-trade-practices claims.[34] Bellagio contends that Lichtenstein does not have a viable claim for deceptive trade practices, so he won't likely be able to recover fees on that basis.[35]

Attorneys' fees may be included in the amount in controversy when an underlying statute authorizes an award for attorney's fees.[36] But the court needs more than a conclusory allegation of fees.[37] So to avoid any speculation, courts in this district require "an estimate as to the time the case will require and opposing counsel's hourly billing rate."[38] I accept Lichtenstein's representation that his initial $6,000 can be proven and recoverable.[39] But he does not provide attorney billing rates or the estimated number of hours that his case will take to substantiate his estimate that his bill will grow by another $20,000. Even assuming he could justify this figure,

---

[33] ECF No. 13 at 11.

[34] *Id.* at 12–13; Nev. Rev. Stat. § 41.600.

[35] ECF No. 17 at 13.

[36] *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

[37] *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

[38] *Hannon v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7146659, at *2 (D. Nev. Dec. 12, 2014) (unpublished); *see, e.g., Cayer v. Vons Companies*, 2017 WL 3115294, at *2 (D. Nev. July 21, 2017) (unpublished); *Delgado v. Starr Indem. & Liab. Co.*, 2023 WL 4105248, at *1 (D. Nev. June 16, 2023). I find the reasoning in these non-binding authorities persuasive and adopt it here.

[39] ECF No. 13 at 11–12.

or if I accept the representation that fees in that amount could be expected in litigation like this, Lichtenstein still falls well below the $75,000 threshold because $1,000 in compensatory damages + $10,000 in punitive damages + $26,000 in attorneys' fees totals just $37,000.

**Conclusion**

Because it appears to a legal certainty that Lichtenstein's claim is really for less than the jurisdictional amount, I find that this court lacks subject-matter jurisdiction over this case. IT IS THEREFORE ORDERED that **this case is DISMISSED** without prejudice to Lichtenstein's ability to refile it in state court. IT IS FURTHER ORDERED that Bellagio's motion to dismiss **[ECF No. 6] is DENIED** as moot.

_____
U.S. District Judge Jennifer A. Dorsey
October 9, 2023